IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-CV-71-D

| | | |
|---|---|---|
| ELAND INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| PROJECT MANAGEMENT QUALITY | ) | |
| SERVICES, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

On April 30, 2018, Eland Industries, Inc. ("Eland" or "plaintiff") filed a complaint against Katherine Coleman ("Coleman"), Steven Edmonds ("Edmonds"), and Project Management Quality Services, Inc. ("PMQS"; collectively, "defendants") [D.E. 2]. On May 23, 2018, defendants moved to dismiss the complaint or alternatively to strike portions of the complaint [D.E. 13], and defendants filed a memorandum in support [D.E. 14]. On June 13, 2018, Eland filed an amended complaint that added Derek Walker ("Walker") as a defendant [D.E. 15]. On the same day, Eland responded in opposition to defendants' motion to dismiss [D.E. 16]. On June 27, 2018, defendants jointly moved to dismiss the amended complaint for lack of subject-matter jurisdiction, improper venue, insufficient service of process, and failure to join a necessary and indispensable party, or in the alternative to strike portions of the amended complaint as immaterial, redundant, or scandalous [D.E. 20]. Defendants also filed a memorandum in support [D.E. 21]. On July 11, 2018, Eland responded in opposition [D.E. 22]. On March 20, 2019, the court held a hearing concerning the motions. As explained below, the court grants defendants' motion to dismiss for lack of subject-matter jurisdiction, declines to exercise supplemental jurisdiction over the state law claims, dismisses

without prejudice the state law claims, and denies as moot the remaining motions.

I.

Eland, a Delaware corporation with its principal place of business in North Carolina, manufactures custom metal and piping equipment for use in the nuclear energy industry. See Am. Compl. [D.E. 15] ¶¶ 12, 14. PMQS, a limited liability company formed under North Carolina law, is a staffing agency that employs independent contractors to provide services in a broad range of industries, but it lacks experience in the nuclear energy industry. See id. ¶¶ 17, 19–20. Coleman, Walker, and Edmonds jointly own and operate PMQS. See id. ¶¶ 21–23.

The United States Department of Energy authorized a modernization project at a nuclear facility in Tennessee (the "Y-12 facility"), and completion is scheduled for 2025. See id. ¶¶ 32–33. Consolidated Nuclear Security, LLC ("CNS") hired Bechtel National, Inc. ("Bechtel"), to perform "all requisite engineering, procurement, construction, and project management support [for] CNS." See id. ¶¶ 26–30, 34–35.

On November 21, 2017, PMQS and Walker received a Request for Quote and Request for Information from Bechtel concerning a spooled piping project for the Y-12 construction project. See id. ¶ 74. Because defendants lacked experience in nuclear facility construction, they forwarded the requests to Eland. See id. Defendants also forwarded technical specifications for the job and a deadline to respond. See id. ¶¶ 76–77. Eland alleges that these acts demonstrate that defendants desired Eland to "assume complete responsibility for" the bid. Id. ¶ 77; see id. ¶ 78. Eland also alleges that defendants represented that, if Bechtel awarded them the project, defendants would "pass-through" any purchase order from Bechtel concerning the project. See id. ¶ 79. Relying on defendants' representations, Eland provided "highly-skilled and detailed responses" to Bechtel's inquiries. Id. ¶ 81. Eland alleges that defendants, however, deliberately removed all traces of

2

Eland's involvement before forwarding those responses to Bechtel, thereby making it appear as if defendants had created these responses. See id. ¶ 82.

On December 12, 2017, Bechtel sent additional questions and requests for clarification to defendants, who forwarded the inquiries to Eland. See id. ¶ 83. Walker, who was Director of Operations for PMQS, represented to Eland that, if Bechtel awarded PMQS the bid, Eland would be the supplier for the piping project. See id. ¶ 84. Eland sent responses to defendants, who again removed any trace of Eland's involvement before forwarding the responses to Bechtel. See id. ¶¶ 85–86. Defendants' actions gave the false impression to Bechtel that defendants had the required expertise for the bid. See id. ¶¶ 86–91.

On January 20, 2018, Bechtel awarded the bid to PMQS. The offer contemplated an unfunded purchase order of $3,157,475.89 and required a response by January 30, 2018. See id. ¶ 94. Although Eland had invested much time and effort in responding to Bechtel's requests and the bid process, PMQS unilaterally accepted Bechtel's offer without notifying Eland. See id. On February 11, 2018, Eland alleges that PMQS sent a poorly drafted "teaming agreement" to Eland. See id. ¶ 99. On the same day, Walker told Eland that he would send the executed Bechtel contract and unfunded purchase order by February 13, 2018. See id. ¶ 101. Eland did not receive the executed contract by February 13, 2018. On March 22, 2018, Coleman said that she would try her best to send the signed and executed contract by the next day. See id. ¶ 102.

Coleman did not do so. See id. ¶ 103. On April 2, 2018, after attempts to communicate by phone, e-mail, and text messaging, Eland's Quality Manager e-mailed Coleman and Walker to ask for the purchase order that day and stated that, if defendants no longer wished to honor their commitment, the parties would need to discuss the matter immediately. See id. ¶ 104. On April 12, 2018, Coleman e-mailed Eland and stated that there was no agreement between the parties and that

3

PMQS would award the contract to another supplier. See id. ¶¶ 105–06. Eland alleges that defendants have no intention to perform the contract with Bechtel and will instead misappropriate the funds for personal use. See id. ¶¶ 107–11.

Eland's amended complaint contains eight claims against defendants: (1) a federal claim pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 for a declaratory judgment declaring that Eland was the only eligible offeror and awardee on the Bechtel bid because defendants failed to register as required by federal law at the time of the offer,[1] (2) common law fraud, (3) negligent misrepresentation, (4) breach of contract, (5) quantum meruit, (6) violation of the Unfair and Deceptive Trade Practices Act ("UDTPA"), (7) a claim for piercing the corporate veil, and (8) an application for a post-judgment charging order. See id. ¶¶ 113–71. The last seven claims arise under North Carolina law. See id.

II.

Defendants argue that this court lacks subject-matter jurisdiction over the federal claim. See [D.E. 21] 7–9. In opposition, Eland argues that federal law implicitly preempts the field of nuclear facility construction and that the combination of implied field preemption, a claim for declaratory relief, and a claim for injunctive relief confers subject-matter jurisdiction over the federal claim under 28 U.S.C. § 1331. See [D.E. 22] 8–14. Eland also contends that the court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. See Am. Compl. [D.E. 15] ¶ 10.

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure tests subject-matter jurisdiction, which is the court's "statutory or constitutional power to adjudicate the

---

[1] Eland also seeks a temporary restraining order and a preliminary injunction to prevent defendants from manufacturing the piping equipment and causing a "Chernobyl-level event." Id. ¶ 121; see id. ¶¶ 118–25. Eland's speculative fears do not justify injunctive relief. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008).

4

case." Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 89 (1998) (emphasis omitted); see Holloway v. Pagan River Dockside Seafood, Inc., 669 F.3d 448, 453 (4th Cir. 2012); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 479–80 (4th Cir. 2005). A federal court "must determine that it has subject-matter jurisdiction over the case before it can pass on the merits of that case." Constantine, 411 F.3d at 479–80. As the party invoking federal jurisdiction, Eland bears the burden of establishing that this court has subject-matter jurisdiction. See, e.g., Steel Co., 523 U.S. at 104; Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). In considering a motion to dismiss for lack of subject-matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. See, e.g., Evans, 166 F.3d at 647. A court should grant a motion to dismiss pursuant to Rule 12(b)(1) "only if the material jurisdictional facts are not in dispute and the moving party is entitled to judgment as a matter of law." Id. (quotation omitted).

The Declaratory Judgment Act permits a court to "declare the rights and other legal relations of any interested party seeking such declaration" when there is "a case of actual controversy within [the court's] jurisdiction." 28 U.S.C. § 2201. The Declaratory Judgment Act, however, merely creates a remedy, not jurisdiction. See Skelly Oil Co v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950); Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., 386 F.3d 581, 592 (4th Cir. 2004); Interstate Petroleum Corp. v. Morgan, 249 F.3d 215, 221 n.7 (4th Cir. 2001) (en banc); Rose Acre Farms, Inc. v. N.C. Dep't of Env't & Nat'l Res., 131 F. Supp. 3d 496, 502 (E.D.N.C. 2015). A court has subject-matter jurisdiction over a claim for declaratory relief if "(1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for jurisdiction over the parties

5

(e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction." Volvo Constr. Equip., 386 F.3d at 592 (quotations omitted); see 28 U.S.C. § 2201; Steffel v. Thompson, 415 U.S. 452, 458 (1974). A court has subject-matter jurisdiction over "suits in which, if the declaratory judgment defendant brought a coercive action to enforce its rights, that suit would necessarily present a federal question." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Tr. for S. Cal., 463 U.S. 1, 19 (1983); see Columbia Gas Transmission Corp. v. Drain, 237 F.3d 366, 370 (4th Cir. 2001).

Eland claims that federal question jurisdiction provides an independent basis for subject-matter jurisdiction because defendants, at the time of the bid, did not register in the System for Award Management ("SAM") as required by the Federal Acquisition Regulations. See Am. Compl. [D.E. 15] ¶¶ 38–41, 107, 114; cf. 48 C.F.R. §§ 52.204-7(a), 52.204-8(b)(1), 52.204-8(d), 4.1102(a). Assuming without deciding that these regulations require an offeror to be registered in SAM when an offer or quote is submitted, the regulations do not create a private cause of action. See, e.g., Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 154 (4th Cir. 1994). Eland does not identify another source of federal law that provides subject-matter jurisdiction.[2] Thus, the court grants defendants' motion to dismiss for lack of subject-matter jurisdiction.

In opposition to this conclusion, Eland cites Stone & Webster Eng'g Corp. v. Ilsley, 690 F.2d

---

[2] A plaintiff need not explicitly cite a federal statute to raise a federal question. See Johnson v. City of Shelby, 135 S. Ct. 346, 347 (2014) (per curiam); Blue v. Craig, 505 F.2d 830, 844 (4th Cir. 1974). Assuming without deciding that the Tucker Act granted jurisdiction to the federal district courts over cases like this one, see 28 U.S.C. § 1491(b)(1), that jurisdictional grant contained a sunset provision that ended concurrent jurisdiction between the district courts and the Court of Federal Claims for actions filed after January 1, 2001. See Res. Conservation Grp., LLC v. United States, 597 F.3d 1238, 1246 (Fed. Cir. 2010); S.C. Comm'n for the Blind v. United States, No. 2:17-1618-RMG, 2018 WL 7246961, at *2 (D.S.C. Aug. 7, 2018) (unpublished). Thus, the Tucker Act does not supply subject-matter jurisdiction in this case.

323 (2d Cir. 1982), and argues that the combination of implied field preemption, a declaratory judgment claim, and a claim for coercive injunctive relief provides subject-matter jurisdiction. Federal question jurisdiction exists if a plaintiff seeks "injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14 (1983). Eland, however, does not seek injunctive relief against a state law, but against performance of a federal government subcontract. Thus, Eland is not a "declaratory plaintiff . . . asserting that preemption affords it insulation from a state-based claim." Stone & Webster Eng'g Corp., 690 F.2d at 328; see H & R Block E. Enters., Inc. v. Raskin, 591 F.3d 718, 721 n.5 (4th Cir. 2010). Moreover, Eland's state law claims against defendants will not "turn in substantial part upon the resolution of the federal question." Garvin v. Alumax of S.C., Inc., 787 F.2d 910, 914 (4th Cir. 1986); see, e.g., Project Mgmt. Quality Servs., LLC v. Eland Indus. Inc., No. 1:18CV412, 2018 WL 6680926, at *6–7 (M.D.N.C. Dec. 19, 2018) (unpublished); L-3 Commc'ns Corp. v. Serco Inc., 39 F. Supp. 3d 740, 746–49 (E.D. Va. 2014); Fastmetrix, Inc. v. ITT Corp., 924 F. Supp. 2d 668, 673–75 (E.D. Va. 2013). Furthermore, Eland's request for injunctive relief is not substantial. See Winter, 555 U.S. at 20; Lovern v. Edwards, 190 F.3d 648, 654–55 (4th Cir. 1999). Thus, the court rejects Eland's argument.

As for federal preemption, generally federal preemption "is raised as a defense to the allegations in a plaintiff's complaint" and therefore does not serve as a jurisdictional predicate. Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987); see Lontz v. Tharp, 413 F.3d 435, 440–41 (4th Cir. 2005). The doctrine of complete preemption, which is not the same as implied field preemption, also does not convert Eland's state law causes of action into federal claims. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 64–65 (1987). The Fourth Circuit applies a presumption against

7

finding complete preemption. See Lontz, 413 F.3d at 440; Custer v. Sweeney, 89 F.3d 1156, 1167 (4th Cir. 1996). To find complete preemption, a court must conclude that the statutory text in question makes clear the legislative intent to displace completely state law. See Lontz, 413 F.3d at 441.

Eland fails to identify a specific statute or statutory scheme that completely preempt state law causes of action. See, e.g., Project Mgmt. Quality Servs., LLC, 2018 WL 6680926, at *6–7. Although Eland argues that the federal government has exclusive authority "to regulate the construction and operation of nuclear power plants," N. States Power Co. v. Minnesota, 447 F.2d 1143, 1154 (8th Cir. 1971), the principle cannot bear the weight that Eland places on it. Eland's state causes of action concern a business dispute between subcontractors, not an attempt to use state law to regulate the construction or operation of a nuclear facility. See Project Mgmt. Quality Servs., LLC, 2018 WL 6680926, at *6–7. Accordingly, even if Eland's argument rests on complete preemption rather than implied field preemption, this case does not fall within the "very narrow range of cases" to which complete preemption applies. Johnson v. Am. Towers, LLC, 781 F.3d 693, 701 (4th Cir. 2015) (quotation omitted); see also Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 212–13 (1983). Accordingly, this court lacks subject-matter jurisdiction over Eland's alleged federal claim. See Burrell v. Bayer Corp., No. 17-1715, 2019 WL 1186722, at *1, 3–10 (4th Cir. Mar. 14, 2019); Project Mgmt. Quality Servs. LLC, 2018 WL 6680926, at *6–7.

As for Eland's state law claims, a district court "may decline to exercise supplemental jurisdiction . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The court has dismissed Eland's claim over which Eland alleged that the court had original jurisdiction, and the court declines to exercise supplemental jurisdiction over

8

Eland's state law claims. Id.; see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012); Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). Accordingly, the court dismisses without prejudice Eland's state law claims.

III.

In sum, the court GRANTS defendants' motion to dismiss [D.E. 20], DECLINES to exercise supplemental jurisdiction over plaintiff's state-law claims, DISMISSES without prejudice plaintiff's state law claims, and DENIES as moot defendants' remaining motion [D.E. 13]. The clerk shall close the case.

SO ORDERED. This 20 day of March 2019.

JAMES C. DEVER III
United States District Judge